S. Brian WILLSON, Holley Rauen, David Duncombe, Duncan Murphy, and Michael Kroll, Plaintiffs,

v.

Lonnie F. CAGLE, John M. Banta, Clayton Y.K. Ching, Edward W. Hubbard, Ralph Dawson, David Humiston, and Robert Mayfield, Defendants.

No. C–88–0328 RFP.

United States District Court, N.D. California.

May 4, 1988.

Thomas Steel, Law Offices of Thomas Steel, APC, San Francisco, Cal., for plaintiff S. Brian Willson.

Doron Weinberg, Larson & Weinberg, San Francisco, Cal., for plaintiff Holley Rauen.

Mark Coby, San Francisco, Cal., for plaintiff David Duncombe.

Linda Fullerton, Point Richmond, Cal., for plaintiff Duncan Murphy.

A.J. Kutchins, Berkeley, Cal., for plaintiff Michael Kroll.

Paul Wolfe, John Penrose, Asst. U.S. Attys., San Francisco, Cal., for defendant U.S.

Anne B. Nash, Jeffrey J. Parish, Rosenblum, Parish & Bacigalupi, San Francisco, Cal., for defendant Clayton Y.K. Ching.

John M. Kelson, and Malcolm Sher, Wilson, Sher, Marshall & Peterson, Oakland, Cal., for defendant Captain Lonnie Cagle.

Paul A. Elizondo, King, Johnson & Shapiro, Oakland, Cal., for defendants Ralph Dawson, David Humiston and Robert Mayfield.

Jerry K. Cimment, San Francisco, Cal., for defendant Edward Hubbard.

## ORDER DENYING MOTION TO SUBSTITUTE UNITED STATES AS DEFENDANT

PECKHAM, Chief Judge.

### INTRODUCTION

This suit arises out of the tragic events that occurred at the Concord Naval Weapons Station on September 1, 1987. On that date, a munitions train operated by the United States Navy collided with a group of demonstrators who had positioned themselves astride of the tracks outside the weapons station. Plaintiff Brian Willson lost both his legs as a result of the collision. The other plaintiffs allege that they too suffered various injuries.

On January 29, 1988, the plaintiffs filed this action. They seek to recover damages from seven federal employees who were involved in the events of September 1, 1988. The defendants have been sued in their individual capacities. The plaintiffs intend to join the United States as an additional defendant once they have exhausted

their administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 (1982). The United States now moves to be substituted in as the sole defendant in this action under the provisions of 28 U.S.C. § 2679(b). For the reasons stated below, the motion is denied.

## DISCUSSION

The government's motion is based on the following provision of the Federal Drivers Act of 1961 (the Act):

The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death, resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment, shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission gave rise to the claim.

28 U.S.C. § 2679(b). The government argues that this statute, read broadly, immunizes the individual defendants under the circumstances of this case. This argument presupposes that a train is a motor vehicle within the meaning of section 2679(b). The government also takes the position that section 2679(b), if applicable, precludes not only the plaintiffs' negligence claims, but also those claims based on intentional tort theories. These novel arguments will be considered in turn.

### 1) Definition of "Motor Vehicle"

■ The term motor vehicle is not defined by the Federal Drivers Act. The legislative history also sheds little light on the scope of this term as used in section 2679(b). Therefore, the words should be taken as having their ordinary, contemporary meaning. *See, e.g., Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

A motor vehicle is commonly defined as "an automotive vehicle not operated on rails; esp. one with rubber tires for use on highways." *Webster's Third New International Dictionary* (1981 ed.); *see also*

*American Heritage Dictionary of the English Language* (1969 ed.) (defining motor vehicle as "any self-propelled, wheeled conveyance that does not run on rails."). The government attempts to argue that these definitions are not contemporaneous with the passage of the Federal Drivers Act of 1961, and therefore should not control. However, the 1965 edition of *Webster's* contains an identical definition of the term motor vehicle. *See Webster's Third New International Dictionary* at 1476 (1965 ed.). Thus it seems clear beyond doubt that a train is not considered a motor vehicle in common parlance, and was not so considered in 1961.

This conclusion is reinforced by the fact that, in other contexts, Congress has consistently defined the term motor vehicle to exclude trains. *See e.g.,* 15 U.S.C. § 1391(3) (1982) (" 'Motor vehicle' means any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads, and highways, except any vehicle operated exclusively on a rail or rails."); *see also* Plaintiffs' Brief at 8 & n. 4 (listing 18 similar statutory definitions). Courts that have had occasion to consider the issue have likewise uniformly excluded trains from the definition of motor vehicles. *See e.g., Missouri–Kansas–Texas Railroad Co. v. Coryell,* 483 P.2d 1148, 1151 (Okla.1971); 27A Words & Phrases at 400–402 (1961) (citing numerous cases).

Admittedly, none of these cases arose in the context of section 2679(b). However, this is of little comfort to the government. It appears that in the twenty-seven years since the Federal Drivers Act's passage no court has even been asked to consider the issue of whether a train is a motor vehicle within the meaning of the Act. This lack of activity is persuasive evidence that trains are not considered motor vehicles in the common parlance of lay people and practitioners.

Faced with the onslaught of authority in favor of the plaintiffs, the government has not produced a single definition of the term motor vehicle which explicitly includes trains. The government does cite two

cases that arguably give an expansive reading to the term motor vehicle. In *Collins v. Department of the Army*, 626 F.Supp. 536, 539 (W.D.Pa.1985), the court stated, "by way of dictum," that section 2679(b) might be applicable to an accident involving a ship. No individual employee was even involved in the *Collins* case. In a case arising out of an airplane accident, *Kiker v. Estep*, 444 F.Supp. 563, 565 (N.D.Ga.1978), the court stated as a general proposition that section 2679(b) would bar suit against an individual employed as a federal pilot. This statement is also clearly dicta, as the court held that the pilot was not a federal employee. *See id.* at 566. Judging from the opinions, the *Collins* and *Kiker* courts never considered the issue of whether a ship or a plane could be a motor vehicle within the meaning of the act.

The government also argues that the policy behind the Act favors the application of section 2679(b) to accidents involving any sort of government vehicle. Why should section 2679(b) apply to accidents involving munitions trucks, but not to those involving munitions trains? The answer appears to be that, in passing the Act, Congress choose to deal with the narrow problem of accidents involving motor vehicles. Congress did not write more broadly, to immunize federal employees from all tort liability arising from the performance of their duties, nor even from all liabilities arising from vehicle accidents. As other courts have observed, albeit in the quite different context of upholding the Act against due process challenges:

> The legislative history [of the Act] makes it clear that Congress was moved by the fact that automobile accident insurance placed such a heavy financial burden on government drivers that it was adversely affecting morale and making it difficult for the government to attract competent drivers into its employ.... We think that the magnitude of the automobile insurance problem justified Congress's separate treatment of this specific problem. Furthermore, as the Supreme Court said in *Silver* [*v. Silver*, 280 U.S. 117, 123–24 [50 S.Ct. 57,

58–59, 74 L.Ed. 221] (1929) ], in response to a substantially similar argument:

> "[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none.... It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs."

*Carr v. United States*, 422 F.2d 1007, 1012 (4th Cir.1970); *see also Thomason v. Sanchez*, 539 F.2d 955 959–60 (3rd Cir.1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977).

In any event, the question posed by the government would best be directed towards Congress. In the face of overwhelming congressional, judicial and linguistic authority that the term motor vehicle excludes trains, this court cannot unilaterally expand the definition of that term. The conclusion is therefore inescapable that section 2679(b) does not apply to collisions involving trains.

### *2) Preclusion of Intentional Tort Claims*

■ Even if section 2679(b) applied in this case, the government's motion might only be partially successful. Section 2679(b), if applicable, would clearly require that the negligence claims against the individual defendants be dismissed. However, the plaintiffs' allegations—which for the purposes of this motion must be accepted as true—include causes of action based on intentional tort theories. The plaintiffs argue that section 2679(b) was not intended to preclude such claims.

The government responds that section 2679(b) should be read broadly to preclude all suits against government employees arising out of the use of motor vehicles. In this instance, the government's reading of the statute is quite plausible. The statute states that a suit against the United States shall be "exclusive of any other civil action or proceeding by reason of the same subject matter against the employee...."

28 U.S.C. § 2679(b). Because intentional tort claims involving motor vehicles arise out of the same subject matter as negligence claims, they are arguably precluded.[1]

In resolving this disputed issue of statutory construction, this court's duty is "to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes [of Congress]." *Commissioner v. Engle*, 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984). A statute should not be read over literally, but rather should be interpreted in light of the reasons for which it was written, *see General Service Employees Union Local No. 73 v. N.L.R.B.*, 578 F.2d 361, 366 & nn. 17–18 (D.C. Cir.1978), especially where an over literal interpretation would lead to an absurd result. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982).

The legislative history of the Act demonstrates that the Act was passed because of concern that federal employees were being inequitably treated. Unlike many employers, the federal government did not carry insurance that would indemnify its employees for accidents that occurred in the course of their employment. Thus federal employees who were involved in routine traffic accidents during the performance of their duties could be held personally liable for damages caused by their negligence. Federal employees in many low-paying jobs had to purchase their own liability insurance or run the risk of being held personally liable for accidents. This risk was not illusory, since accident victims sometimes preferred to sue the employee individually in order to receive state court jury trials. Suits against the federal government under

the Federal Tort Claims Act had to be tried to judges in federal court. Many felt that this state of affairs put an unfair burden on federal employees. *See* S.Rep. No. 736, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin.News 2784, 2789–90.

Instead of providing insurance for federal employees, Congress decided that it would be more efficacious to make the remedy against the United States exclusive in cases involving motor vehicle accidents. *See id.* at 2786. Thus from the point of view of federal employees section 2679(b) is the functional equivalent of indemnity insurance. Insurance coverage is commonly limited to torts of negligence, rather than intentional torts. There is no indication in the legislative history of the Federal Drivers Act that Congress meant to depart from this common practice—indeed, indications are to the contrary. *See* 107 Cong. Rec. 18501 (1961) (remarks of Senator Ervin) (stating that the Act is concerned with "the federal employee, whether he is a postal employee or an employee in some other federal activity, who causes injury *unintentionally* in the performance of his duties.") (emphasis added).

The paradigmatic case that prompted Congress to adopt the Federal Drivers Act was that of a postman who had an accident while performing his appointed rounds. Clearly Congress desired that the postman not be held individually liable in these circumstances. The result would be quite different, however, if while engaged in his rounds the postman spotted an enemy and intentionally ran him down. There is no indication that Congress intended to give government employees carte blanche to intentionally commit mayhem with public vehicles while engaged in the performance of

---

**1.** In support of its position, the government cites to *Vantrease v. United States*, 400 F.2d 853, 855 (6th Cir.1968) and several other circuit court decisions following *Vantrease.* These cases stand for the unremarkable proposition that "when section 2679 applies, the FTCA remedies are indeed exclusive...." Reply Brief of United States at 9. Thus *if* section 2679(b) is applicable, a suit against an individual employee cannot be brought, even if the FTCA claim against the government is barred by the statute

of limitations, *see Carr v. United States*, 422 F.2d 1007, 1011 (4th Cir.1970), or if the plaintiff is also a federal employee whose exclusive remedy against the government for work related injuries is under the Federal Employees Compensation Act. *See Van Houten v. Ralls*, 411 F.2d 940 (9th Cir.), *cert. denied,* 396 U.S. 962, 90 S.Ct. 436, 24 L.Ed.2d 426 (1969). These cases are of little assistance to the threshold inquiry of whether section 2679(b) should apply *at all* to intentional tort claims.

their public duties.[2] The government's argument, if accepted, would lead precisely to this result. The result is made more unconscionable by the fact that the victim in the above hypothetical would not even have recourse against the government, as in general the government is not responsible for the intentional torts of its employees. *See* 28 U.S.C. § 2680(h).

The statutory framework adopted by Congress provides an injury victim with alternative remedies. The nature of the remedy available to a given plaintiff is determined by the nature of the action that caused the injury. People whose injuries are caused by the negligent acts of government employees operating motor vehicles within the scope of their employment can seek recovery solely from the government. People whose injuries are caused by government employees acting outside the scope of their employment cannot look to the government for compensation, but rather must look to the individual employee. *See* S.Rep. No. 736, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Admin.News 2784, 2787 (the Act "does not provide the basis for any liability against the United States based on the unauthorized use of Government motor vehicles."). Duplicative recovery against both the government and the employee is not allowed. *See* 28 U.S.C. § 2676; *Arevalo v. Woods*, 811 F.2d 487 (9th Cir.1987). However, some remedy is always made available. The government's reading of section 2679(b), pressed to its logical conclusion,

would create a third category of injuries for which *no* remedy was available: those intentionally caused by government employees while operating motor vehicles within the scope of their employment.[3] We do not believe that Congress intended to leave victims bereft of a remedy in this situation. Accordingly, we do not accept the government's position. Section 2679(b) will instead be given a narrower reading, to preclude only those tort actions against individual government employees sounding in negligence.

## CONCLUSION

A train is not a motor vehicle within the meaning of 28 U.S.C. § 2679(b). That section therefore has no application to this case. Even if it did, section 2679(b) would not preclude claims based on intentional tort theories. Accordingly, the government's motion to substitute in as sole defendant is denied.

IT IS SO ORDERED.

2. This example is used for illustrative purposes only. It is not meant to imply that the individual defendants are similarly culpable in this case. At this point in time, the court of course expresses no opinion about whether the individual defendants intended to injure the plaintiffs. The plaintiffs, however, have so alleged, *see* Complaint ¶¶ 37–39, 43, 52, 57, and 62, and these allegations must be treated as true for the purposes of this motion. *See Western Mining Counsel v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

3. Although the parties have not briefed the issue, it could be argued that section 2679(b) does not apply to intentional torts because the commission of an intentional tort is always "an unauthorized use of a government vehicle." In

*Nasuti v. Scannell*, 792 F.2d 264 (1st Cir.1986), the court below dismissed a negligence claim brought against a federal driver, but had remanded causes of action based on reckless and intentional tort theories. The district court had held, as a matter of state law, that the use of a motor vehicle to commit assault and battery was necessarily a use "outside the scope of employment." Therefore, section 2679(b) did not preclude a suit against the driver. *Id.* at 266, 269; *but see Malicote v. McDowell*, 479 F.Supp. 63, 64 (E.D.Tenn.1979) (concluding that section 2679(b) barred suit against a driver for intentionally running over plaintiff's two pet goats during the course of a federal strip mine inspection). The First Circuit determined that it was without jurisdiction to review the lower court's remand order. *See Nasuti*, 792 F.2d at 267–69.